SCHWAB, Appellant, vs. ESBENSHADE, Respondent.

*November 19, 1912—January 7, 1913.*

*Fraud: Sale of corporate stock: False representations: Rescission: Waiver of right: Evidence: Questions for jury.*

1. A false representation, made by the vendor to induce the purchase of corporate stock, that he had arranged with the other stockholders that upon the sale being made the purchaser would be elected treasurer and business manager of the corporation and would receive a certain weekly salary, was a material representation and, if the purchaser relied thereon in making the purchase, constituted ground for a rescission of the contract.

2. Upon the evidence in this case, the questions whether such representation was made and whether the purchaser relied thereon were for the jury.

3. Negotiations had by the purchaser with other stockholders upon the same subject, prior to the purchase, do not indisputably show that he relied wholly upon their statements and not upon the representations of the vendor.

4. The fact that the purchaser of the stock, after being elected to a different position and at a less salary than that promised him, with full knowledge of the facts remained with the corporation for two weeks performing the duties of the position and accepting the compensation voted him, did not, as a matter of law, constitute a ratification of the contract and a waiver of his right to rescind, where it appeared that he at once protested to the vendor, refused to accept the result, offered to return the stock, demanded back his money, and told the vendor he would remain and do the work assigned only for the time being and because he was without other employment; but upon the whole evidence the question of waiver was one for the jury.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

The plaintiff seeks to have a contract for the purchase and sale of stock in the Westfahl File Company declared rescinded, and to recover the money paid by him to the defendant as the consideration for the sale.

Some time prior to October, 1910, the plaintiff, then twenty-two years of age and a teller in the Merchants and Manufacturers Bank in the city of Milwaukee, stated to the defendant, a patron of the bank, that he desired to get into some business where he might use his experience and ability and work for himself. The defendant suggested that the plaintiff buy his interest in the Westfahl File Company, of which the defendant was then a member of the board of directors, the treasurer, and the business manager. His interest consisted of one half of the stock, 220 shares, of the par value of $22,000. The defendant had been engaged in the business of manufacturing files for some twenty years, was a man of years, and desired to retire from active business.

The defendant at first asked $30,000 for his interest, but

after some negotiations between the parties $25,000 was agreed upon as the price to be paid for his interest; $1,500 to be paid in cash, the balance in the form of several notes. The plaintiff testified that the defendant assured him at first that he could arrange, and thereafter that he had arranged, with the other stockholders that the plaintiff should be elected to the positions he himself held with the company and that the plaintiff should receive the same salary the defendant was receiving, $40 per week. A contract for the sale and purchase of the stock was duly signed. It contains nothing referring to the positions and the salary the plaintiff was to receive from the company. During the negotiations the plaintiff talked with the other stockholders and officers of the company regarding its affairs and made some examination of the books and the stock and manufacturing plant. He testified that he relied absolutely upon the statements of the defendant as to the value of the stock and the assurances given him by the defendant that the defendant had fixed it with the stockholders so that the plaintiff would hold the positions defendant held and would receive the salary of $40 per week.

At a special meeting of the stockholders of the company held on October 5, 1910, the plaintiff was duly elected a director of the company. At the meeting of the board of directors held the same day he was elected sales manager and his salary was fixed at $35 per week, and a resolution was adopted that all checks drawn by the treasurer should be countersigned by the plaintiff as director. The plaintiff was dissatisfied with the action taken and testifies that he complained to the defendant and that he was then assured by the defendant that matters would be arranged satisfactorily. He offered to return the stock and demanded the return of the $1,500 and of the notes he had given the defendant as the consideration for the stock. The plaintiff worked for the company for two weeks. He states that he so worked because he had given up his position with the bank and had no other position open

to him.   Subsequently, the plaintiff having failed to pay
some interest due on the notes, the defendant notified him
that, deeming it necessary to secure the payment of the
notes, the defendant had had transferred to himself the
shares of stock which the plaintiff had assigned to him as
security for the payment of the notes.

The defendant denied that he had promised that the plaint-
iff should be elected treasurer and have a salary of $40 per
week.   There was evidence on the trial tending to show that
the contract price of the stock was in excess of its fair market
value.

Exception was taken to the charge of the court to the jury
on the ground that the court erred in not submitting to the
jury the issues of fraud alleged and sustained by the evidence.
Judgment was duly entered in favor of the defendant for
costs on the verdict of the jury in favor of the defendant.
This is an appeal from the judgment.

For the appellant there was a brief by *McElroy & Ferguson,*
and oral argument by *W. J. McElroy.*

*Samuel M. Field,* for the respondent.

Siebecker, J.   The trial court informed the jury that
the plaintiff sought to recover the $1,500 he had paid as
part of the purchase price of the stock, upon a rescission of
the contract of sale on the ground of fraud; that the plaint-
iff alleged as fraudulent the defendant's representations
as to the value of the stock; that he also alleged that
the defendant, with intent to deceive and induce the plaint-
iff to purchase the stock, falsely represented that he (the
defendant) had arranged with the other stockholders and the
directors of the company that if the plaintiff would purchase
defendant's stock plaintiff would be elected a director, the
treasurer, and the business manager of the corporation and
would be paid a salary of $40 per week; that the plaintiff
claimed that he relied and acted on this arrangement in en-

tering into the written contract with the defendant for the purchase and sale of the defendant's stock for the sum of $25,000; that the plaintiff now asserted that he had canceled the contract on account of such fraud; and that he demanded the return of the money he had paid the defendant as part of the purchase price.

There is no serious controversy on this appeal but that the court by its instructions directed the jury to limit its inquiry to the issue of the alleged fraud pertaining to false representations as to the value of the stock, and thus excluded from its consideration and determination the question of the alleged fraud of the defendant in falsely representing to the plaintiff that he had arranged with the other stockholders and directors that if plaintiff purchased defendant's stock he would be made a director, the treasurer, and the business manager of the corporation and receive a salary of $40 per week. If these last alleged false representations were made by the defendant and if plaintiff relied and acted thereon as he alleges, they manifestly constitute a material representation, and the question of whether or not they were fraudulently made was an essential and material issue; and failure to submit it to the jury was obviously prejudicial error, if the evidence in the case on this issue of fact was sufficient to carry it to the jury.

The contention of the respondent is that the omission of the court to submit this issue to the jury constitutes no error upon the trial, for the reason that the evidence was insufficient to sustain a verdict finding that the defendant made the alleged false representations to induce the plaintiff to make the contract for the purchase of the stock and that plaintiff relied thereon in making the purchase. The plaintiff testified that he met the defendant as a customer of the bank and informed him of his desire to leave his employment in the bank and to engage in some business for himself where he could make use of his experience and business

knowledge to promote his personal interests; that the defend-
ant suggested that the plaintiff purchase defendant's interest
in the corporate business and thereby be put in a position to
take the place in the corporation which the defendant held;
that this led to negotiations between them with this end in
view; that the defendant communicated to the plaintiff many
facts regarding the business affairs of the corporation and
stated to him the condition and value of the property, upon
which plaintiff relied in buying defendant's stock; that the
defendant represented if plaintiff would purchase defend-
ant's stock in the concern defendant would make arrange-
ments with the other stockholders to secure for the plaintiff
the same positions defendant held as a member of the corpo-
ration; that plaintiff assented to purchase defendant's stock
upon these conditions; and that the defendant at their next
meeting informed the plaintiff that he had made this arrange-
ment and it was fixed: "I would come in and take his posi-
tion if I would buy him out. Right then and there I gave
him a check for $1,000." Other statements of a like effect
were given in evidence by the plaintiff, with some variation
of phraseology but of no practical difference. The defendant
denied that he made these representations. Plaintiff's evi-
dence on this subject, if the jury found it credible, was in no
way consistent with the defendant's innocence of this fraud.
Nor is it so uncertain and ambiguous in its effect that it
can be held as matter of law not to warrant the jury in find-
ing it of sufficient probative force to repel the presumption
of innocence and fair dealing between the parties. We are
persuaded that the evidence presented a conflict on this point
which should be resolved by a jury.

It is contended by the respondent that the evidence shows
that the plaintiff did not rely on these representations in
making the purchase of the defendant's stock. An examina-
tion of the record shows that there is evidence in the case
tending to show that the plaintiff relied thereon. The in-

ferences to be drawn from the facts and circumstances on this subject are not so clear and compelling that it can be said as matter of law that plaintiff did not rely on the representations which he alleges induced him to make the purchase. The negotiations he had with the other stockholders do not indisputably show that the plaintiff in fact relied on their representations in the matter or that he would have made the contract regardless of the alleged promises of the defendant to obtain the positions and salary for him if he purchased the stock.

It is also contended that the plaintiff, by attending the stockholders' and directors' meetings and by accepting the employment offered him at a less compensation, after being denied an election to all the positions defendant had theretofore held and the salary of $40 per week, waived all the defaults of the defendant in the transaction in respect to the contract and ratified the contract of purchase and sale of the stock by retaining it, and that he thereby precluded himself from rescinding the sale. True, it appears that the plaintiff, with full knowledge of these facts, remained with the corporation for two weeks and accepted the compensation voted him. It also appears that the plaintiff immediately protested to the defendant that he had not fulfilled his promises, that he expressed dissent from what had been done at the directors' meeting and informed the defendant that he would not accept the result, that he offered defendant the stock and demanded the return of the purchase money paid thereon; that he told the defendant he would remain and perform the work assigned him only for the time being and because he was without other employment; and that he at all times insisted to the defendant that he would not accept the situation in fulfilment of the arrangement between them. It seems that the defendant held the stock as security for the unpaid purchase money, and shortly after plaintiff left the employment of the corporation the stock was retransferred on

the books of the corporation to the defendant and that he has not repaid any of the $1,500 received as part payment from the plaintiff. The evidence presents an issue of fact for the jury to decide, whether the plaintiff repudiated the offers made to him as a stockholder in place of what defendant had agreed to secure for him, or whether he acquiesced in the situation as it was and thereby ratified the transaction of the stock purchase from the defendant. From these considerations it must follow that the court committed prejudicial error in not submitting these questions to the jury, and a new trial must be had.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded for a new trial.